**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JERMAINE REDMAN | : | CIVIL ACTION |
| v. | : | |
| PAUL K. SMEAL, et al. | : | NO. 09-0630 |

**MEMORANDUM RE: HABEAS CORPUS PETITION**

**Baylson, J.**                                                                                                              **April 12, 2010**

## I.      Introduction

Petitioner Jermaine Redman filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, raising four grounds for relief (Docket No. 1). This Court referred the matter to Magistrate Judge Jacob P. Hart for a Report & Recommendation ("R & R") on the merits (Docket No. 3), and the Government responded to Redman's petition (Docket No. 10).

On October 8, 2009, Judge Hart filed his R & R, which recommended that the petition be denied. (Docket No. 14). On January 11, 2010, Redman, after having been granted an extension of time, timely filed objections to the R & R. (Docket No. 18). Upon independent and thorough review, and for the reasons stated below, the Court will adopt the R & R and deny the Petition for Habeas Corpus.

## II.     Factual and Procedural Background

A jury in the Court of Common Pleas for Philadelphia County convicted Redman of various charges, including third-degree murder, aggravated assault, reckless endangerment of another person, and possession of an instrument of crime. Commonwealth v. Redman, No. 2150 EDA 2004, J.S45016/05, at 3 (Pa. Super. Ct. Nov. 30, 2005) (unpublished memorandum) (internal citations omitted). On direct appeal, Redman challenged the sufficiency of the evidence

underlying his conviction. On November 30, 2005, the Pennsylvania Superior Court denied his appeal, and described the facts underlying Redman's conviction as follows:

> On May 27, 2001, Redman entered a crack house located in the 1500 block of North Woodstock Street in the city of Philadelphia and thereafter became engaged in an altercation with an individual known only as "Man." During the altercation, Redman's watch became loose, fell off his wrist, and landed behind a sofa. When Redman left the house he did not realize that his watch had fallen off his wrist. A woman named "Birdie" subsequently retrieved the watch from behind the sofa and placed it on the table. Approximately two hours later, Andre Stanley entered the house and took the watch.
> At approximately 5:00 a.m. that same morning, Redman returned to the residence and asked Harold Finney about the missing watch, at which point Redman shot Finney in the foot. After Redman shot Finney, other occupants in the residence immediately informed Redman that Stanley had taken the watch. Redman then stated that he was going to "f—k Andre up" and immediately left the residence. Once Redman had departed, Finney called the police and was subsequently transported to a local hospital where a bullet was removed from his foot.
> Later that morning, Redman drove up to Stanley on the 1400 block of North 17t Street and asked him, "[w]here's my fucking watch, Dre?" Stanley replied . . . that the "bald-headed bitch got your watch." Redman then shot Stanley, resulting in Stanley's death. The police were able to determine that the bullet recovered from Stanley's body was of the same type and was fired from the same firearm as the one that was used to shoot Finney.

Id. at 1-2 (internal citations omitted).

The Pennsylvania Supreme Court then denied Redman's petition for allocatur. (Habeas Pet. ¶ 9(e).)

On May 4, 2006, Redman filed a timely petition for review under Pennsylvania's Post-Conviction Relief Act, 42 Pa. C.S.A. § 9541, et. seq. ("PCRA"). Redman's appointed counsel filed a letter of no merit and requested to be excused from the case, pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988), and Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. Ct. 1988) (en banc). According to appointed counsel, Redman brought four claims of ineffective assistance of trial counsel. (Letter from Def. Counsel to Judge Gary S. Glazer 3-8, Gov't Resp.,

Ex. B.) Redman filed a pro se response to counsel's Finley letter. (Docket No. 19.)

On May 29, 2007, the PCRA court dismissed Redman's petition and permitted his counsel to withdraw. Commonwealth v. Redman, 2001 Nos. 0417 and 0418 (Ct. Com. Pl. Phila., May 29, 2007), Docket No. 21. The Pennsylvania Superior Court denied Redman's subsequent pro se appeal. Commonwealth v. Redman, No. 1574 EDA 2007, J.S13036/08, No. 1574 EDA 2007 (Pa. Super. Ct. Apr. 9, 2008) (unpublished memorandum). On October 7, 2008, the Pennsylvania Supreme Court denied Redman's petition for review. Commonwealth v. Redman, 959 A.2d 319 (Pa. 2008) (table).

On February 12, 2009, Redman filed this petition for habeas corpus relief, which raised the same four ineffective assistance of counsel claims as his earlier PCRA petition. Judge Hart filed his R & R on October 8, 2009, recommending that the habeas petition be denied. Redman filed timely objections to the R & R, which challenge Judge Hart's conclusions as to three of the four habeas claims.

### III. The Parties' Contentions

#### A. Summary of the R & R

Redman's habeas petition contended that trial counsel was ineffective in (1) not objecting and requesting a curative instructions when the prosecutor elicited testimony purportedly violating Redman's privilege against self-incrimination; (2) not objecting to a comment in the prosecutor's closing arguments supposedly referencing Redman's prior bad acts; (3) not objecting to comments made in the prosecution's closing that purportedly suggested misleadingly that fingerprint evidence had been found at the crime scene; and (4) not conducting reasonable pre-trial investigation or calling particular witnesses. The R & R concluded that the state court

did not unreasonably apply, or act contrary to, clearly established federal law in denying each of these claims, and recommended that the petition be denied.

### 1. Privilege Against Self-Incrimination

The R & R found that under <u>Doyle v. Ohio</u>, 426 U.S. 610 (1976), impeaching an explanation a defendant offers at trial, by using his silence at arrest, violates due process. (R & R 5.) Judge Hart, however, also found that <u>Doyle</u> took care to note in footnote 11 that "post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the version on arrest," <u>id.</u> at 619, n.11. (R & R 5.)

The R & R determined that Redman's facts fell within the ambit of footnote 11, because the prosecutor only solicited police testimony that Redman had not disclosed his purported alibi upon arrest, after Redman put on two alibi witnesses, and testified in his own defense that he had provided the police officers with this alibi when he was arrested. (R & R 5.) Judge Hart concluded that even though the state court failed to cite footnote 11 and was "weak in some respects," "the outcome it reached was unquestionably consistent with clearly established law," and thus, its conclusion warrants deference by this Court. (R & R 5.)

### 2. Prosecutor's Closing Arguments

Judge Hart then turned to Redman's ineffective assistance claims respecting trial counsel's decision to not object to portions of the prosecutor's closing argument. For the statement supposedly referencing Redman's prior violent acts, Judge Hart found that the "factual basis for the Commonwealth's decision is not rock-solid," but agreed with the state court that "Redman has not shown the prejudice from his counsel's actions which is required by

Strickland," that being that "but for his counsel's error, the result of his trial would have been different." (R & R 7.) In particular, the R & R detailed the prosecution's case and concluded that "the circumstantial evidence against Redman was very strong," and that "it is unlikely that the jury would have reached a different result," because "the jury had to judge the case based on what occurred on the day of the shooting, and not on other occasions." (R & R 8.) As to the prosecutor's statements respecting fingerprints, the R & R found no merit to this argument, concluding that "it was clear that the prosecutor was using oratorical flair in analogizing the ballistics evidence to fingerprints." (R & R 9-10.)

### 3. Trial Counsel's Decision to Not Call Certain Witnesses

The R & R also determined that Redman's trial counsel did not render ineffective assistance by failing to call the following individuals as witnesses: Dr. Hamilton, the doctor who treated Finney and whose medical report purportedly states that Finney's foot wound was self-inflicted; and Stephanie Wiley and Pamela Carter, individuals interviewed by police near where Stanley was shot, who stated that they heard gunshots around 4:00 a.m. The R & R found that throughout the state and federal court proceedings, Redman failed to present an affidavit from any of the witnesses "representing an availability and willingness to testify." (R & R 11.) Judge Hart found that Redman failed to meet the Third Circuit's requirement that a habeas petitioner bringing such a claim "establish that the witness was available to testify, and identify the nature of the witness's testimony." (R & R 11.)

In addition, the R & R noted that "under Strickland, as under Pennsylvania state law, Redman's counsel was not ineffective unless his failure to call these witnesses prejudiced Redman," which has not been shown. (R & R 11.) For Dr. Hamilton, the R & R found that

Redman's assertion that the doctor opined that the Finney's gunshot wound was self-inflicted, is "an exaggeration," because the doctor's report only stated that "Summation Compl shot himself," and Finney testified at trial that he told his physician in the hospital that he shot himself, because he was afraid to tell the truth. (R & R 11.) As for Wiley and Carter, the R & R determined that their statements that they heard the shooting at 4:00 or 4:15 a.m. do not contradict the testimony of one of the responding police officers that the shooting was reported to the police at 5:15 a.m., nor could their statements "rebut the ballistic evidence that the same gun which shot Finney shot Stanley." (R & R 11.)

### B. Redman's Objections

Redman only objected to Judge Hart's findings and recommendations respecting three of the ineffective assistance claims, and did not challenge the R & R's determinations that the prosecutor's reference to fingerprints during closing only demonstrated oratorical flair, and thus, that trial counsel was not ineffective for failing to object.

#### 1. Privilege Against Self-Incrimination

Redman contends that "the magistrate totally ignored the crux of his argument" respecting his Fifth Amendment rights. (Objections 1.) Although Redman agrees that "the prosecution could call Detective Reinhold as a rebuttal witness," he avers that the prosecution's questioning "fundamentally denied him a fair trial." (Objections 1-2.) Redman contends that this has been made clear by <u>Greer v. Miller</u>, 483 U.S. 756 (1987), which purportedly held that although the prosecution violated the defendant's right to remain silent by asking him why he hadn't told this story to anyone when he was arrested, the defendant had been afforded adequate due process protections, because his counsel timely objected and the trial court issued "two

curative objections." (Objections 2.) Redman avers that in his case, because "there were no objections nor was there any curative instruction[]," "this error cannot be deemed harmless due to the lack of credible evidence implicated petitioner to the crime in question," and "the magistrate's R & R is contrary to Doyle." (Objections 2-3.)

### 2. Prosecution's Closing Remarks Concerning Redman's Prior Acts

Redman also contends that "the prosecutor's comments undoubtedly had a substantial and injurious effect on the jury finding him guilty," and that "the prosecution's case, being kind, was extremely weak." (Objections 4.) Specifically, Redman avers that "[t]he prosecutor's main witness Harold Finney was extremely unreliable," giving "several contradicting statements," including admissions that he failed to tell the truth to a police officer and to the physician who treated his foot. (Objections 4.) Redman then argued that both Sanders and Johnson, despite incriminating Redman in prior statements, testified at trial as state witnesses, under oath, that they had not seen Redman. According to Redman, the defense presented "two alibi witnesses" and the prosecution also introduced evidence suggesting that Stanley's time of death was 4:00 or 5:00 a.m., "casting doubt on its own theory of death of 6:10 a.m." (R & R 6.)

### 3. Trial Counsel's Decision to Not Call Certain Witnesses

Next, Redman challenges the R & R's findings respecting trial counsel's investigation, concluding that "[b]ecause no evidentiary hearing was held . . . , this claim cannot be effectively adjudicated." (Objections 8.) According to Redman, Dr. Hamilton's medical analysis of Mr. Finney's gun shot wound was ambiguous, and the only way to understand this analysis is to interview Dr. Hamilton. (Objections 9.) Redman contends that because such evidence was "exculpatory and would have contradicted the commonwealth's case," he was "denied his right

to present witnesses in his favor." (Objections 9.)  Respecting Carter and Wiley's statements to the police, Redman contends that these corroborate the state physician's opinion that the time of Stanley's death was between 4:00 and 5:00 a.m., and "cast even more doubt on Mr. Finney's already disingenious [sic] testimony that he was shot around 5:00 a.m." (Objections 8-9.) Redman also argues that counsel did not state on the record "why he failed to interview, or whether he did interview these witnesses," and that this Court cannot make determinations as to counsel's actions without a complete record, as multiple cases purportedly hold. (Objections 10.)

## IV. Legal Standards

### A. AEDPA

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), a federal court is precluded from granting habeas relief on any claim decided in a state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." Williams v. Taylor, 529 U.S. 362, 404-405 (2000) (citing 28 U.S.C. § 2254(d)(1)); Fountain v. Kyler, 420 F.3d 267, 272-273 (3d Cir.2 005).

In ruling on objections to the R & R of a United States Magistrate Judge, this Court reviews de novo only those R & R findings to which a petitioner specifically objects. 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72.  When reviewing documents filed pro se, a court must keep in mind that "[a] document filed pro se is 'to be liberally construed.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### B. Ineffective Assistance of Counsel

Claims for ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, counsel is presumed to be effective, and a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy,'" in order to prevail on an ineffectiveness claim. Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Thus, a petitioner must first prove that counsel's conduct was so unreasonable that no competent lawyer would have followed it, and that counsel has "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. In addition, a petitioner must prove prejudice, that being a reasonable probability that, but for counsel's "unprofessional errors, the result of the proceeding would have been different." Id. at 694.

## V. Analysis

### A. Privilege Against Self-Incrimination

Under the Supreme Court's decision in Miranda, "a person taken into custody must be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitted to interrogation." Doyle, 426 U.S. at 617.

As the R & R properly noted, in Doyle, the Supreme Court addressed "whether a state prosecutor may seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest." Id. at 611. The Doyle Court held that the prosecutor's "use of the defendant's post-arrest silence in this manner violates due process," and reversed and remanded the defendants' convictions. Id. In so ruling, the Court emphasized that "[s]ilence in

the wake of [Miranda] warnings may be nothing more than the arrestee's exercise of [his] Miranda rights," and "[t]hus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." Id. at 617.

In footnote eleven, however, the Doyle Court, expressly excluded from the scope of its decision the case in which "the fact of post-arrest silence [is] used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest." Id. at 620 n. 11. In such a scenario, the Supreme Court determined that "[i]t goes almost without saying" that the prosecution may use the defendant's "fact of earlier silence" in order to "challenge the defendant's testimony as to his behavior following arrest." Id. The Doyle Court also noted that in this situation, the prosecutor's use of the defendant's earlier silence "would not be used to impeach the exculpatory story." Id.

This Court agrees with the R & R's conclusion that Redman's case involves the facts described in footnote eleven of Doyle, even though the state court did not discuss Doyle. (See R & R 5.) Had Redman merely presented an exculpatory version of events for the first time at trial, under Doyle, the prosecution could not have questioned him about why he had not made a similar disclosure upon or after his arrest, because his silence following the Miranda warnings would have been "insolubly ambiguous." Doyle, 426 U.S. at 617. Redman, however, upon testifying in his own defense, expressly stated that he told the detectives at the time of his arrest that he had an alibi.[1] (See Trial Tr. 20:9-20, May 12, 2004.) The prosecution's subsequent

---

[1] After presenting two witnesses who testified that Redman was with them the night before the early-morning shooting and could not have committed the crime (Trial Tr. 153:6–179:20, 180:25-217:1, May 12, 2004), Redman took the stand in his own defense, and had the following exchange on cross-examination:

questioning of rebuttal witness Detective Reingold to specifically "challenge [Redman's] testimony as to his behavior following arrest," is exactly the type of use of an arrestee's silence that Doyle permits, 426 U.S. at 620 n.11.

Redman's objection that the Supreme Court's decision in Greer counsels a contrary result is without merit. In Greer, the trial court "explicitly sustained an objection to the only question that touched upon [the defendant's] post-arrest silence," and "specifically advised the jury that it should disregard any questions to which an objection was sustained." 483 U.S. at 764. As a result, the Greer Court concluded that "[t]he fact of [the defendant]'s post-arrest silence was not submitted to the jury as evidence from which it was allowed to draw an permissible inference, and thus, no Doyle violation occurred." Id. at 764-65.

Although it is true that unlike Greer, the prosecutor in this case pursued questioning respecting Redman's post-arrest silence, Greer by no means called into question Doyle's conclusion that the prosecution may use the fact of a defendant's post-arrest silence to challenge the defendant's directly contradictory testimony as to his behavior following arrest, 426 U.S. at 620 n.11. In fact, Greer emphasized that "the holding of Doyle is that the Due Process Clause bars the use for impeachment purposes of a defendant's post-arrest silence." 483 U.S. at 763

---

| | |
|---|---|
| Q. | When did you first tell anybody that you had an alibi in this case? |
| A. | When I used Guy Sciola in the preliminary hearing. The detectives when they locked me up. |
| Q. | Which detective did you tell that you had an alibi? |
| . . . | |
| A. | Reinhold and Lynch. |
| Q. | You told them that you had an alibi? |
| A. | Yes I did. |

(Trial Tr. 20:9-20, May 13, 2004.)

(emphasis added) (internal quotation marks omitted).  As Doyle has already clarified, when a defendant "testifies to an exculpatory version of events and claims to have told the police the same version upon arrest," subsequent questioning regarding the defendant's post-arrest silence "would not be used to impeach the exculpatory story." 426 U.S. at 620 n.11.  Thus, the R & R correctly determined that the state court's conclusion that Redman's counsel was not constitutionally ineffective for failing to object to the prosecutor's questioning, comports with Supreme Court precedent and warrants deference.

**B.  Prosecution's Closing Remarks Concerning Redman's Prior Acts**

Redman contends that his counsel was ineffective for failing to object to the prosecutor's closing statements, which purportedly allude to his prior acts of violence.[2] The Pennsylvania Superior Court adopted the PCRA trial court's reasoning, finding that "[w]hile these comments were objectionable, and counsel for defendant should have objected and requested a cautionary instruction, defendant cannot demonstrate that he was prejudiced by the comments." Redman,

---

[2]The prosecutor's closing remarks included the following:

> [Defense] Counsel says, well there is no evidence in this case that he has done other acts of violence on other occasions in that house.  Well guess what?  I can't do that.  I'm not allowed to put up other acts of violence by the defendant.  If I did, there would be an objection sustained.  You're not to consider that.  You have to decide this case on what happened that day.  Not because he does something on another occasion.  I'm not going to put up evidence that you can't consider.  I'm not allowed to say what he did to other people in that drug house that day, but use your common sense.

(Trial Tr. 128:18-129:7, May 13, 2004.)  As the R & R details, this statement came after Redman testified in his own defense that when conflicts arise with "junkies and dealers," he would "[j]ust leave them alone."  (Trial Tr. 29:10 30:2, May 13, 2004.)  During closing arguments, Redman's defense attorney then called into question the credibility of Harold Finney's testimony that he had been shot in the foot by Redman.  (Trial Tr. 95:12-22, May 13, 2004.)

-12-

J.S13036/08, at 7-8.

This Court must apply a "strong presumption that counsel's performance falls within the 'wide range of professional assistance,' [and] the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 688-89). Upon examining the record, the Court agrees with Judge Hart that Redman has failed to show prejudice.

At trial, the prosecution presented the statements of two witnesses who asserted that they saw Redman on the day of the shooting. Sanders heard Redman expressly state his intent to hurt Stanley for taking the watch and saw Redman leave with a gun in hand (Trial Tr. 200:2-201:23, 202:25-203:4, 211:14-20, May 11, 2004), while Johnson reported seeing Redman by a vehicle resembling Stanley's, and hearing Redman ask Stanley at the time of the shooting (Trial Tr. 50:5-9, May 12, 2004). Even assuming that Redman has properly characterized these statements, as well as Finney's, as being inconsistent with trial testimony or other statements respecting the underlying events, Redman has failed to establish a reasonable probability that objections to the prosecution's closing remarks regarding Redman's prior acts would have resulted in a different outcome at trial. Instead, this Court, like the R & R, finds that such evidence of what occurred on the day of the shooting makes it unlikely that a jury would have reached a different result absent defense counsel's purported error. Because Redman has not demonstrated prejudice, this Court need not decide whether his counsel was deficient. See Strickland, 466 U.S. at 697. Accordingly, this Court concludes that the state court did not depart from clearly established Supreme Court law in finding that defense counsel's failure to object to the prosecution's closing

remarks was not ineffective.

### C. Trial Counsel's Decision to Not Call Certain Witnesses

As the R & R detailed, it is far from clear that calling Dr. Hamilton, Wiley, and Carter as witnesses would have bolstered Redman's defense and rebutted the prosecution's evidence. Finney had already testified that after being shot, he lied about the shooting by telling the police that someone on Ridge Avenue shot him and telling his treating physician that he shot himself, out of fear. (Trial Tr. 120:9-20, May 11, 2004.) Trial counsel had a reasonable basis for not calling Dr. Hamilton, because any testimony he could offer about how Finney represented the wound as being self-inflicted would have been redundant, and nothing in the record indicates that his professional medical opinion was that the wound was more likely to be self-inflicted than inflicted by another person. As for Wiley and Carter, their testimony that they heard the shooting at 4:00 or 4:15 a.m. neither contradicts the prosecution's evidence that the shooting was reported to the police an hour later, nor rebuts the ballistic evidence that the same gun shot both Finney and Stanley. Thus, testimony from the witnesses in question does not raise "a reasonable probability that, but for counsel's [purportedly] unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Moreover, as the R & R detailed, Redman has not presented an affidavit from any of the witnesses whom trial counsel did not present demonstrating availability and willingness to testify. Absent such a showing, this Court finds that Redman has not shown that trial counsel's strategic decision to not present such witness testimony falls outside "the range of professionally

reasonable judgments," Strickland, 466 U.S. at 699.³  As a result, the Court cannot find that the state court's conclusion that trial counsel was not ineffective by failing to interview, or at least, to present testimony at trial of Dr. Hamilton, Carter, and Wiley, unreasonably applies, or is contrary to, clearly-established Supreme Court precedent.  Accordingly, the Court will defer to the state court's conclusion.

## VI. Conclusion

For the reasons stated above, the Court will adopt the R & R and deny the Petition for Writ of Habeas Corpus.  The Court has concluded that there is no basis for the issuance of a certificate of appealability.  An appropriate Order follows.

O:\CIVIL 09-10\09-630 Redman v. Smeal\Redman v. Smeal - 2254 Habeas Memo.wpd

---

³Both the Third Circuit and the Pennsylvania Supreme Court require a defendant bringing an ineffective assistance claim based on failure to present a witness to show the witness's availability and willingness to testify.  See Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (requiring a habeas petitioner to "allege[] []or offer[] evidence that any such testimony was forthcoming or available upon reasonable investigation"); Commonwealth v. Priovolos, 715 A.2d 420, 422 (Pa. 1998) ("In order to make a claim of ineffectiveness for failure to interview or present a witness, a petitioner must demonstrate:  (1) the existence and availability of the witness; (2) counsel's awareness of, or duty to know of, the witness; (3) the willingness and ability of the witness to cooperate and appear on behalf of the defendant; and (4) the necessity of the proposed testimony in order to avoid prejudice.").